UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

In re Application of
Torgovy Dom,

        Applicant.

Case No. 20-mc-80 (WMW/TNL)

**ORDER**

---

David E. Suchar and Peter K. Doely, Maslon LLP, 90 South 7th Street, Suite 3300, Minneapolis, MN 55402 (for Applicant).

---

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Applicant Torgovy Dom's Ex Parte Application for an Order Pursuant to 28 U.S.C. § 1782(a) to Obtain Discovery for Use in a Foreign Proceeding. (ECF No. 1.) For the reasons set forth below, the Application is granted.

## I. BACKGROUND

Applicant Torgovy Dom KAT oil OOO ("Torgovy Dom") is a Russian limited liability company. (Decl. of Vladimir Pestrikov ("Pestrikov Decl.") ¶ 6, ECF No. 6.) Torgovy Dom is a wholly owned subsidiary of Petro Welt Technologies AG, formerly known as C.A.T. oil AG ("CAToil"), an Austrian corporation. (*Id.*) Between 2009 and 2015, Torgovy Dom served as the purchasing agent for CAToil's operating subsidiaries ("Operating Subsidiaries") and purchased hundreds of millions of dollars in equipment and spare parts from the United States and Europe for the Operating Subsidiaries' use. (*Id.*) These Operating Subsidiaries provided various services for oil and gas producing companies in the Russian Federation and Kazakhstan. (Appl. at 2.)

From 2006 until 2015, Victoria Sokolova ("Sokolova Senior") served as the Chief Financial Officer of CAToil for Russia and the CIS,[1] and also served as the head of CAToil's Moscow representative office. (Pestrikov Decl. ¶7.) In this role, she supervised the operations of Torgovy Dom. (*Id.*)

Torgovy Dom alleges Sokolova Senior, along with other CAToil executives, engaged in a fraudulent procurement scheme which resulted in Torgovy Dom purchasing equipment at artificially inflated prices. (*Id.* ¶¶ 9-13.) In this scheme, Torgovy Dom was directed by Edward Brinkmann, head of CAToil's international procurement, to make purchases through a series of intermediary companies as opposed to directly from US and European suppliers. (*Id.* ¶¶ 10-11.) Each time goods passed through an intermediary they were subject to an artificial mark-up in price before ultimately being sold to Torgovy Dom. (*Id.* ¶ 11.) Baltic Oil, the intermediary company which ultimately sold goods to Torgovy Dom, was co-founded by Sokolova Senior, who was also the initial 50% shareholder of the company. (*Id.* ¶ 13.) Torgovy Dom alleges it overpaid for purchased goods by tens of millions of dollars. (*Id.* ¶ 12.)

The markups were then transferred at Edward Brinkmann's direction to other third-party entities owned, controlled, or affiliated with Mr. Brinkmann and his mother, Anna Brinkmann. (*Id.*) Ms. Brinkmann was, during this time, CAToil's largest shareholder, Chief Operating Officer, Chief Risk Officer, and a member of its Management Board. (*Id.*

---

[1] While Pestrikov's Declaration does not define "CIS," the Application provides that Sokolova Senior "was CAToil's Chief Financial Officer for Russia and the Commonwealth of Independent States." (Appl. at 3.) This suggests to the Court that CIS is not a title, but an abbreviation for an area that Sokolova Senior managed. The lack of precise definition of "CIS" does not affect the analysis of this Order.

2

¶ 12.)  Ms. Brinkmann was also Sokolova Senior's direct report.  (*Id.* ¶ 8.)  In exchange for her cooperation, the Brinkmanns allegedly rewarded Sokolova Senior with at least six million dollars in purported "bonuses" and "consulting fees" from Anna Brinkmann and Hard Sun Invest & Trade Corp. ("Hard Sun"), a Panama corporation with ties to the Brinkmanns and one of the intermediary entities "to which the markups were transferred at the direction of Mr. Brinkmann."  (*Id.* ¶¶ 12-13.)  Baltic Oil's Manager, Konstantin Vladimirovich Moskalenko, corroborated this scheme by signing an affidavit stating that markups were transferred from Baltic Oil to other foreign companies, and eventually to Hard Sun.  (Aff. Konstantin Vladimirovich Moskalenko, Ex. 4 to Pestrikov Decl., ECF No. 6-4 at 1.[2])[3]  Moskalenko also detailed payments made to Hard Sun totaling over $14 million dollars from August 8, 2011 through March 19, 2012.  (*Id.* at 3-4.)

The proceeds received by Sokolova Senior were managed by UPM Limited ("UPM"), an investment firm owned by Anna Brinkmann.  (Pestrikov Decl. ¶ 13.) In a separate 2015 affidavit, Sokolova Senior confirmed that she received more than six million dollars in bonuses from Ms. Brinkmann, that she signed documents in English regarding the management of these funds at UPM, and that some bonus payments came in the form of loans from Hard Sun.  (Aff. of Sokolova Senior ¶¶ 25-28, Ex. 2 to Pestrikov Decl., ECF No. 6-2.)[4]

---

[2] For clarity, the Court uses the ECF pagination when citing to ECF No. 6-4, Exhibit 4 to Pestrikov's Declaration, because this Exhibit contains a number of different documents.

[3] This is the English translation of the affidavit.  Torgovy Dom has provided a notarized letter from Jia Zheng, employee of New York Company TransPerfect, approving the accuracy of the translation.  (*Id.* at 8.)  Torgovy Dom also provided the original version of the affidavit in Russian.  (*Id.* at 9-12.)

[4] This is the English translation of the affidavit.  Torgovy Dom has provided a notarized letter from Anders Ekholm, employee of New York Company TransPerfect, stating that this is a "true and accurate translation from Russian to English."  (*Id.* at 7.)  Torgovy Dom has also provided the original version of the affidavit in Russian.  (*Id.* at 8-13.)

Torgovy Dom has also provided an affidavit from Nicolas Theocharides, the CEO and Executive Director of UPM, which details UPM's relationship with Sokolova Senior and her daughter, also named Victoria Sokolova ("Sokolova Junior").  (*See* Aff. of Nicolas Theocharides, Ex. 1 to Pestrikov Decl., ECF-6-1.)   According to Mr. Theocharides, Sokolova Senior and Sokolova Junior held a joint account with UPM Limited from March 17, 2011 until January 23, 2015.  (*Id.* ¶ 4.)  Their signed agreement with UPM Limited provided that "any one of the two could individually give instructions to U.P.M. Limited and thus have control of the funds under management at any time."  (*Id.* ¶ 6.)  In 2015, Sokolova Junior asked Mr. Theocharides about transferring funds to her bank account in the United States "where she has been living from many years."  (*Id.* ¶ 8.)  Sokolova Junior and Sokolova Senior liquidated their funds held at UPM and terminated their relationship with UPM later in 2015.  (*Id.*)  Funds were transferred to Eurobank Cyprus Ltd.  (*Id.*; *see also* January 12, 2015 Letter from Sokolova Senior and Sokolova Junior to UPM, Ex. 5 to Pestrikov Decl., ECF No. 6-5 (requesting a termination of their agreement with UPM and for UPM to "transfer all of our cash minus your outstanding fees from Hellenic Bank Public Company Ltd., Credit Suisse (UK) Limited and Bethmann Bank AG to our following joint accounts under both of our names in Eurobank Cyprus Ltd.").)

Petro Welt Technologies, owner of Torgovy Dom, has since sued Mr. Brinkmann in the state of Florida.  (*See* Dep. of Sokolova Junior, Ex. 6 to Pestrikov Decl., ECF No. 6-6.)[5]  As part of this action, Sokolova Junior was deposed on December 18, 2019.  (*Id.*)

---

[5] The caption of this case is *Petro Welt Trading Ges.m.d.H., an Austrian limited liability company; Petro Welt Technologies AG, an Austrian stock corporation; et al., v. Edward Brinkmann, an individual; Majab Development, LLC, a Florida limited liability company; and DOES-10*, No. 11-2018-CA-002531-001-XX.  According to court

4

During this deposition, Sokolova Junior testified that she has a bank account with U.S. Bank, N.A. ("US Bank"). (*Id.* at 180:7-11.) Based on its investigation, including this deposition testimony, Torgovy Dom believes some of the monies misappropriated by Sokolova Senior pursuant to the fraudulent procurement scheme have been transferred to or through Sokolova Junior's US Bank account. (Pestrikov Decl. ¶ 19.) US Bank is headquartered in Minneapolis, Minnesota. (*See* Exs. 1 & 2 to Decl. of David E. Suchar, ECF No. 5.)

As its supervisor, Sokolova Senior owed fiduciary obligations to Torgovy Dom under Russian law. (Pestrikov Decl. ¶ 7.) On October 12, 2020, Torgovy Dom sent a demand letter to Sokolova Senior outlining her wrongful conduct and "advising that Torgovy Dom would commence litigation . . . in the Russian courts to recover the sums misappropriated by her" unless the matter was informally resolved. (*Id.* ¶ 14; *see also* Demand Letter at 1-2, Ex. 3 to Pestrikov Decl., ECF No. 6-3.)[6] Sokolova Senior has not responded to the letter. (Pestrikov Decl. ¶ 15.) Torgovy Dom therefore intends to file suit against Sokolova Senior in the Arbitrazh Court in the City of Moscow, a court of first instance in the Russian Federation. (*Id.* ¶ 20; *see also id.* ¶ 2 (stating that the foreign proceeding will seek to "recover the moneys wrongfully received by Sokolova Senior as her reward for her participation in this fraudulent scheme."); Mem. of Law in Supp. of

---

records, this matter is still pending in Florida's Twentieth Judicial Circuit in and for Collier County, Florida. *See* Clerk of the Circuit Court & Comptroller Collier County, Florida Court Records Search, https://cms.collierclerk.com/cmsweb#!/ (enter 11-2018-CA-002531-001 into case number search field).

[6] This is the English translation of the letter sent to Sokolova Senior. Torgovy Dom has provided a notarized letter from Joyce Chen, an employee of New York Company TransPerfect, certifying that the letter was a "true and accurate translation from Russian to English." (Demand Letter at 3.) Torgovy Dom also provided the original version of the Demand Letter in Russian. (*Id.* at 4-5.)

Appl. at 4, ECF No. 4 ("Torgovy Dom intends to assert claims against Sokolova Senior in the Foreign Proceeding for, among other things, breach of fiduciary duty, damages for civil tort, and unjust enrichment.").)  It seeks to file these claims "in the near future."  (Pestrikov Decl. ¶ 16.)

## II.  ANALYSIS

Under 28 U.S.C. § 1782,

> [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person . . . .

28 U.S.C. § 1782(a); *see also In re Hallmark Capital Corp.*, 534 F. Supp. 2d 951, 953–54 (D. Minn. 2007) (an order is "appropriate where the Applicant establishes that (1) the discovery is sought from a person found in this district, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the applicant is an 'interested person' before such foreign tribunal.").

Here, based on the record before the Court, US Bank is headquartered in Minneapolis, Minnesota, which is within the District of Minnesota.  *See also In re CA Inv. (Brazil) S.A.*, No. 19-mc-22 (MJD/SER), 2019 WL 1531268, at *3 (D. Minn. Apr. 9, 2019) (finding US Bank "resides" in the District of Minnesota for purposes of a 1782 application). Applicant Torgovy Dom seeks to use the discovery sought for future proceedings before the Russian Arbitrazh Court of the City of Moscow (the "Russian Court").  Though the suit has not yet been filed, Torgovy Dom has attached to its Application significant details of

its investigation, which includes affidavits and deposition testimony.  Further, these future proceedings fall under the expansive scope of Section 1782.  *See In re Hallmark*, 534 F. Supp. 2d at 955 (*citing Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 253-54) (2004) ("[A] proceeding need not be pending or even imminent to invoke the statute."); *see also Intel Corp.*, 542 U.S. at 259 (foreign proceedings need only "be within reasonable contemplation"); *Bravo Express Corp. v. Total Petrochemicals & Refining U.S.*, 613 F. App'x 319, 323 (5th Cir. 2015) (awarding discovery when the application was filed with "a sworn affidavit . . . lay[ing] out, in great detail, the facts that give rise to the prospective lawsuit."); *In re Hansainvest Hanseatische Investment-GmbH*, 364 F. Supp. 3d 243, 249-50 (S.D.N.Y. 2018) (finding that litigation was sufficiently contemplated when applicants had hired counsel, retained experts, and sent a demand letter and concluding in light of those facts the matter did not "fit the profile of a fishing expedition.").  Finally, Torgovy Dom qualifies as an "interested person," given it intends to bring an action against Sokolova Senior in the Russian Court.  *Intel Corp.*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested persons' who may invoke § 1782.").  Accordingly, Torgovy Dom has satisfied the requirements set forth in § 1782(a).

"[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Id.* at 264.  The Supreme Court has enumerated four "factors that bear consideration in ruling on a § 1782(a) request." *Id.*  These factors are: (1) whether the person from whom discovery sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the foreign proceedings,

and the receptivity of the foreign tribunal to federal judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies; and (4) whether the request is unduly intrusive or burdensome. *Id.* at 264–65; *accord In re Hallmark Capital Corp.*, 534 F. Supp. 2d at 954 (once the statutory requirements are met, "a court has the discretion to grant an application under Section 1782 if doing so would (1) provide an efficient means of assistance to participants in international litigation, and (2) encourage foreign countries to provide reciprocal means of assistance to United States courts and litigants.") (citing *In re Application of Euromepa*, 51 F.3d 1095, 1097, 1101 (2d Cir. 1995)).

Based on the factors outlined in *Intel Corp.*, the Court concludes that the Application should be granted. US Bank will not be a participant to the foreign proceedings. Rather, it is an entity outside of the jurisdiction of the Russian Court holding information which could be highly relevant to Torgovy Dom's claims against Sokolova Senior. There is no indication that the Russian Court would reject evidence obtained by Torgovy Dom in the United States. *See, e.g.*, *In re Potanina*, No. CV 14-19-BLG-SPW, 2014 WL 12600449, at *5 (D. Mont. Apr. 16, 2014) (finding "Russian courts are generally receptive to receiving discovery obtained through § 1782(a)) (citation omitted); *see also* (Pestrikov Decl. ¶ 21 ("Russian law does not prohibit a party from seeking evidence abroad by whatever legal means are available to it.").) Further, there is no indication that Torgovy Dom is attempting to circumvent foreign proof-gathering procedures. And finally, the discovery sought is narrowly tailored. A review of the proposed subpoena shows that Torgovy Dom seeks documents maintained by US Bank in its ordinary course of business and that the proposed

8

subpoena limits its request by relevant dates and lists targeted searches to produce relevant information with minimal burden. (*See* Ex. A to Appl. at 3-11.) Accordingly, the Court finds that the factors espoused in *Intel Corp.* weigh in favor of granting the Application.

Nevertheless, the information that Torgovy Dom seeks is highly sensitive. While the factors in *Intel Corp.* do not require a showing of pending or active litigation in a foreign proceeding, and while the Court has broad discretion to grant the production of documents for use in foreign proceedings under 28 U.S.C. § 1782(a), the Court does have general concerns regarding the production of personal banking information for litigation that has not yet commenced. Though the specific record before the Court, with detailed affidavits and information related to a court proceeding in Florida, in no way suggests that Torgovy Dom is acting improperly in seeking this discovery, the Court notes there is a general potential for abuse in the ex parte gathering of personal banking records under the specter of anticipated litigation. While Torgovy Dom is correct that US Bank could move to quash the subpoena (*see* Mem. of Law in Supp. of Appl. at 8-9), there is no information currently before the Court suggesting that Sokolova Junior will be notified of the subpoena by US Bank or will have the same opportunity to object to the disclosure of her banking information. Thus, while the Court will grant this Application, it will also require Torgovy Dom to treat any records received in response to the subpoena as if it carries an "attorney's eyes-only" designation. Use of these records shall be limited to the impending suit against Sokolova Senior in the Arbitrazh Court in the City of Moscow and the records shall not be revealed to any other party, unless specifically authorized by further order of the Court.

9

## III. ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Applicant Torgovy Dom's Ex Parte Application for an Order Pursuant to 28 U.S.C. § 1782(a) to Obtain Discovery for Use in a Foreign Proceeding (ECF No. 1) is **GRANTED**.

2. Torgovy Dom, through counsel, is authorized to issue, sign, and serve a subpoena upon US Bank, in substantially the same form as attached to the Application. (Subpoena, Exhibit A to the Appl., ECF No. 1 at 6-19.) Due to the sensitive nature of this information, it shall be treated as if produced under an "attorney's eyes-only" designation. Use of these records shall be limited to the impending suit against Sokolova Senior in the Arbitrazh Court in the City of Moscow and the records shall not be revealed to any other party, unless specifically authorized by further order of the Court.

3. In accordance with 28 U.S.C. § 1782(a), the discovery conducted pursuant to this Order, as well as any related motion practice, shall comply with the Federal Rules of Civil Procedure and the Local Rules of this Court.

[continued on next page]

4. Failure to comply with any provision of this Order or any other prior consistent order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; and/or any other relief that this Court may from time to time deem appropriate.

Date: March  8 , 2021

        *s/Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*In re Application of Torgovy Dom*
Case No. 20-mc-80 (WMW/TNL)